

FILED

APR 1 7 2017

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

CHARLIE PARKER, JR.,

   **Plaintiff,**

v.              **Civil Action No. 2:16-cv-126**

CAROLYN W. COLVIN,
**Acting Commissioner of the
Social Security Administration,**

   **Defendant.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

   Plaintiff Charlie Parker, Jr. ("Parker"), seeks judicial review of a decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Specifically, Parker claims that the Administrative Law Judge ("ALJ") made numerous errors in formulating Parker's Residual Functional Capacity ("RFC"). Parker also claims that the Appeals Council improperly denied review of his appeal from the ALJ's decision. This action was referred to the undersigned United States Magistrate Judge pursuant to provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. Because the ALJ properly formulated Parker's RFC and it was supported by substantial evidence, and because the Appeals Council properly denied review, this Report recommends that the district court affirm the Commissioner and dismiss all of Parker's claims.

## I.  PROCEDURAL BACKGROUND

   Parker originally applied for DIB on August 13, 2012, which was denied in May 2013. (R. 72). On July 31, 2014, Parker again applied for DIB, alleging a disability onset date of

1

February 14, 2007. (R. 143-45, 188). However, he later amended his alleged onset date to June 1, 2012. (R. 32). Parker's claims were denied initially and upon reconsideration. (R. 81, 96). He requested and received a hearing before an ALJ, which was held on August 13, 2015. (R. 28-62). The ALJ issued an unfavorable decision on September 25, 2015, finding that Parker did not qualify for DIB because he was not disabled under the relevant provisions of the Social Security Act. (R. 13-23). Parker appealed to the Appeals Council, which denied his request for review, making the ALJ's decision the final decision of the Commissioner. (R. 16-19). Parker's date last insured ("DLI") was December 31, 2012. (R. 15). Thus, to obtain benefits, Parker had to prove disability sometime between June 1, 2012, his amended onset date, and December 31, 2012, his DLI.

## II.  FACTUAL BACKGROUND

Parker is a forty-year-old military veteran who suffers from various mental health issues, including bipolar disorder and PTSD. Parker served in the Air Force from 1994 to 2003, and was honorably discharged. (R. 40). Parker also served another term beginning in 2003, which ended in a dishonorable discharge in 2009 after he was court marshalled in 2007 for a sexual offense and sentenced to six years' incarceration. (R. 38-39). He served two and a half years in a naval brig before he was paroled in 2009. (R. 39). After his release, Parker moved in with his parents and began attending classes at Old Dominion University ("ODU"). (R. 41-42). However, Parker was forced to withdraw from classes in spring 2011 after he was incarcerated for violating parole. (R. 39, 277). Parker served fourteen months and was paroled again in May 2012. (R. 43). He re-enrolled at ODU starting in summer 2012 and maintained a "B" average through the fall 2012. (R. 277). Parker was not gainfully employed during any period after his initial incarceration in February 2007. (R. 32, 41).

2

A.    **Medical Treatment during Period of Alleged Disability**

In June 2012, Parker was evaluated by neurologist Loyd Hutchings, M.D., for possible traumatic brain injury stemming from an incident in 2003. (R. 908). Parker scored a 27 out of 30 on the Mini-Mental State Examination ("MMSE"), and was found to be alert to time, place, and situation; his communication and comprehension abilities intact. Id. Parker also denied having impairments in memory, attention, and concentration. (R. 909). Dr. Hutchings determined that there were no significant long-term effects attributable to the head trauma, and further examination was unnecessary. (R. 908).

In July 2012, Parker sought treatment for his mental condition from the VA. On July 13, 2012, Dr. Frank Lee wrote that Mr. Parker was undergoing treatment, that he had a bipolar disorder diagnosis, and felt that he would be unable to work "until after his medical and psychological problems [were] fully evaluated." (R. 269). On July 18, 2012, Parker underwent a Compensation & Pension ("C&P") examination for the purposes of determining if he was disabled under VA regulations. (R. 1926-946). Parker was seen by Heath Patterson, Ph.D., who determined that Parker met the diagnostic criteria for PTSD and bipolar disorder, mixed with psychotic features. (R. 1927-929, 1938-941). However, Dr. Patterson also found that Parker was appropriately groomed, fully alert and oriented, and signs of a formal thought disorder were largely absent. (R. 1942-944). Parker completed multi-step commands without difficulty and correctly followed the examiner's instructions. (R. 1943). Dr. Patterson did not assess Parker to have total occupational and social impairment. (R. 1929).

3

In October 2012, Parker presented for a mental health follow-up appointment with Sarah Minnick, RN-BSN. (R. 1125-127). He reported that he was taking psychotropic medications as prescribed and denied experiencing any psychotic episodes or suicidal ideation. (R. 1126). Nurse Minnick found that Parker was alert and oriented, spoke normally, and that his thought process was normal and well organized. Id. In terms of his mood, Parker did report having good days and bad days in, and Minnick observed his affect as depressed. (R. 1127).

In November 2012, as a result of the C&P examination, the VA issued Parker a disability rating of 100% for PTSD and bipolar disorder. (R. 263-65). The VA rating letter also assessed Parker to have a Global Assessment of Functioning ("GAF") score of 40.[1] (R. 264). The VA did not determine Parker to be unemployable. (R. 163).

**B.    Medical Treatment after Period of Alleged Disability**

In March 2013, Parker was incarcerated following another parole violation. On March 28, 2013, while in custody, he was seen by a Calvin Bosman, MD, and was assessed to have a GAF score of less than 30. (R. 258). Dr. Bosman observed that Parker suffered from poor insight, was uncooperative, and irritable. Id. The doctor also noted that Parker was suffering from paranoid delusions and suicidal ideation, and recommended a seven day psychiatric hospitalization. (R. 258-59). On April 1, 2013, Mr. Parker was assessed to lack "sufficient insight or capacity to make responsible decisions with respect to [his] treatment." (R. 260-61). After Parker was released from incarceration in May 2014, he was arrested by Virginia police on

---

[1] Clinicians use the GAF scale, devised by the American Psychiatric Association and ranging from zero to one hundred, to indicate an overall judgment of a person's psychological, social, and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000). A GAF of 71-80 indicates that "if symptoms are present, they are transient and expectable reactions to psycho-social stressors;" a GAF of 61-70 indicates that the individual has "some mild symptoms;" a GAF of 51-60 indicates that the individual has "moderate symptoms;" and a GAF of 41-50 indicates that the individual has "serious symptoms." Id. However, the DSM-5 abandoned the use of GAF scores as a diagnostic tool for assessing a patient's functioning because of the questionable probative value of such scores. Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 16 (5th ed. 2013).

outstanding warrants. (R. 1883). At the time of his arrest, Parker voiced suicidal thoughts and was taken to the DePaul emergency department. Id. Following that episode, Parker received inpatient psychiatric services for approximately a month. (R. 2421).

In May 2013, a state agency psychologist, Bryce Phillips, Psy.D., found that Parker would not be able to understand and remember detailed instructions, but had no significant limitations in his ability to carry out short, simple instructions. (R. 68). Dr. Phillips also concluded that Parker should not interact with the general public. (R. 69). In May 2015, another state agency psychologist, Joseph Leizer, Ph.D., reviewed Parker's mental health treatment records. (R. 89-93). Acknowledging that Parker's date last insured was December 31, 2012, Dr. Leizer agreed with Dr. Phillips that Parker had no significant limitations in his ability to carry out short, simple instructions, and should not be required to interact with the general public. (R. 93).

In July 2015, a VA mental health doctor, John Meyers, M.D., completed a "Mental Residual Functional Capacity Assessment" where he checked boxes indicating that Parker had marked limitations in maintaining a schedule, maintaining attention and concentration, completing a normal workweek without interruption from psychological symptoms, and with appropriately responding to changes in the workplace. (R. 2917-18). Dr. Meyers referenced Parker's hospitalizations in 2014 and 2015 in his assessment. (R. 2919).

**C.     New Evidence Submitted to Appeals Council and District Court**

In addition to all the materials provided to the ALJ, Parker also provided the Appeals Council with two letters that were endorsed by his doctors, Dr. Meyers and Dr. Lee. In November 2015, Parker's attorney sent a letter to Dr. Meyers with a copy of the ALJ's decision attached. (R. 3235). The letter stated:

5

> As you can see, the ALJ concluded that Mr. Parker was capable of working. The ALJ made this decision in spite of the voluminous medical record which showed that Mr. Parker has been hospitalized and treated consistently for his mental illness. Please review this decision. After reviewing the decision, please take the time to opine regarding the following.

Id. The letter then prompted Dr. Meyers to indicate – yes or no – whether he believed (1) Parker has not been able to work since his alleged onset date, and (2) whether Parker's condition had worsened since the alleged onset date. Id. Dr. Meyers responded affirmatively to both questions. Id. The same letter was sent to Dr. Lee, who also answered both questions, "yes." (R. 3236).

After filing this suit, Parker provided two additional letters from Dr. Meyers and Dr. Lee. Dr. Meyers opined that Parker was totally and permanently disabled and had been unable to work for many years. (ECF No. 1-1). Dr. Lee's letter concurred with Dr. Meyers' opinion. (ECF No. 1-2). Parker also submitted an April 2016 "PTSD Disability Benefits Questionnaire" completed by VA physician Nikolche Naumovski, M.D. (ECF No. 8-1). The questionnaire acknowledged the VA's prior diagnosis of bipolar disorder and PTSD, and indicated that there was no change to that determination. Id. The VA issued a disability decision on April 29, 2016 that found Parker's 100% disability continued and benefits would remain unchanged. (ECF No. 8-2).

### III.    STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance.   Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456.   "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.    ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act. 42 U.S.C. §§ 416(i), 423. The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).   To meet this definition, a

claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See id. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). When conducting this five-step analysis, the ALJ must consider: (1) the objective

8

medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A. ALJ's Decision

After conducting the above five-step analysis, the ALJ concluded that Parker met the insured status requirements, but was not disabled within the meaning of the Social Security Act between his alleged disability onset date, June 1, 2012, and his date last insured, December 31, 2012.

At step one, the ALJ found that Parker did not engage in substantial gainful activity during the period between his alleged onset date and date last insured. (R. 15). At step two, the ALJ found that Parker had the severe impairments of bipolar disorder, PTSD, diabetes, and obesity. (R. 16). At step three, the ALJ concluded that alone and in combination, these impairments did not meet or medically equal one of the listed impairments set forth in SSA regulations. Id. The ALJ did find that, "[w]ith regard to concentration, persistence or pace, [Parker] had moderate difficulties as he alleges that he had difficulty sustaining concentration and focus for more than simple routine instructions and tasks." (R. 17). At step four, the ALJ found that Parker's impairments prevented him from performing his past relevant work. (R. 22). After considering the relevant evidence, the ALJ found that Parker had a residual functional capacity to perform light work, "except that he require[s] the opportunity to change positions from standing to sitting each for at least 30 minutes for comfort; and he [is] limited to simple, repetitive, non-production job tasks with no requirement for interaction with co-workers or the

9

general public." (R. 18). At step five, relying on the VE's testimony, the ALJ concluded that Parker could perform jobs that exist in significant numbers in the national economy. (R. 22).

In determining Parker's RFC at step four, the ALJ assessed his mental impairments, finding that while "the claimant's medically determinable impairments could be reasonably expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (R. 19). The ALJ found that Parker's "alleged mental symptoms are less than fully credible" in part because Parker was able to attend college at ODU and maintain a "B" average throughout the summer and fall of 2012. (R. 20). The ALJ stated that "[t]his level of academic performance is inconsistent with having a disabling mental condition." Id.

The ALJ further noted the lack of treatment history during the period of alleged disability. Id. The ALJ reviewed and discussed the VA's July 2012 C&P examination, noting that the examiner mentioned several functional limitations. Id. However, the ALJ also highlighted that the examination revealed Parker "completed multi-step commands without noticeable difficulty, correctly followed instructions, and demonstrated no dysfunction in long-term recall abilities, abstract reasoning, or short-term recall." (R. 21). The ALJ considered but did not assign any specific evidentiary weight to the C&P examination. After reviewing the relevant medical treatment records, the ALJ concluded that "the evidence is insufficient to establish that the claimant, in this case, was mentally or physically incapable of working within the [RFC] noted above." Id.

The ALJ also considered medical source opinions, including those of Dr. Meyers and Dr. Lee. The ALJ assigned little weight to Dr. Meyers' July 16, 2015, opinion because it "was given several years after the claimant's insured status expired and is written in present tense, indicating

10

current functioning rather than functioning in 2012. Id. The ALJ also assigned little weight to Dr. Lee's July 13, 2012, opinion. Specifically, the ALJ stated that the opinion deserved little weight because Dr. Lee's conclusion that Parker could not work went to an administrative issue reserved to the Commissioner. Id. (citing 20 C.F.R. § 404.1527). The ALJ also noted that Dr. Lee's opinion did not provide a function-by-function assessment of Parker's mental capabilities, or that any limitations present then would last for at least twelve months. (R. 21).

Finally, the ALJ considered the VA's disability determination letter, assigning mixed levels of evidentiary values to it. The ALJ gave substantial weight to the diagnoses. Id. However, the ALJ assigned little weight to the VA's functional assessment, GAF score, and recitation of social and occupational limitations because "no supporting documentation was mentioned in the decision." Id. The ALJ assigned significant weight to the VA's determination that Parker was not unemployable, because "the record does not establish that [Parker] is unable to perform the mental demands of simple routine work." Id.; see also (R. 163, 263-65).

**B.     Remand is not Warranted under 42 U.S.C. § 405(g) (Claim I)**

Parker first argues that remand is warranted in this case because there is new and material evidence of his alleged disability that should be considered pursuant to the sixth sentence of 42 U.S.C. § 405(g). However, because Parker cannot show good cause for why the evidence was not before the Commission at the hearing, and because it is not otherwise material, remand is not warranted under § 405(g).

When evidence not contained in the record is presented for the first time to the district court, sentence six of 42 U.S.C. § 405(g) allows for remand to consider the evidence if certain conditions are met. Specifically, the plaintiff must make "a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the

11

record in a prior proceeding." 42 U.S.C. § 405(g). Interpreting the statute, the Fourth Circuit has developed a four factor test to determine whether remand is warranted: (1) the evidence must be relevant to the determination of disability at the time the application was first filed; (2) the evidence must be material; (3) there must be good cause for failure to submit the evidence before the Commissioner; and (4) the claimant must present to the remanding court a general showing of the nature of the new evidence. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). And plaintiffs bear the burden of proving that all the requirements are met. See Sizemore v. Sec. of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). Evidence is "material" if there is a reasonable probability that it would have changed the outcome of the decision (i.e., would prove disability during the time alleged by the claimant). See Borders, 777 F.2d at 955.

In this case, none of the evidence submitted to the court constitutes "new" evidence, and it is otherwise immaterial. First, the letters submitted by both Dr. Meyers and Dr. Lee are not "new" evidence because Parker cannot show that this medical source opinion evidence was not available to him at the time of his August 2015 hearing. Although the actual letters, which were dated after and referenced the ALJ's decision, were not yet written, he could have obtained this opinion evidence prior to the administrative hearing. And in fact, Parker did submit treatment and medical source opinion evidence from Dr. Lee and Dr. Meyers, which was evaluated and discussed by the ALJ. See (R. 19, 21). Moreover, the fact that Parker chose not to solicit this opinion evidence until after the ALJ had rendered a decision is not "good cause for failure to submit" the evidence. See Borders, 777 F.2d at 955. The letters are also immaterial because it is not reasonably likely that they would have led to a different conclusion. Rather, the opinions

12

contained in the letters would likely have been rejected because they ultimately concern an administrative finding that is reserved to the Commissioner to decide – the exact reason stated by the ALJ for rejecting Dr. Lee's 2012 conclusion that Parker could not work.  See (R. 21). Ultimately, the sixth sentence of § 405(g) is not intended – as Parker attempts to argue here – to allow for claimants to obtain opinion evidence contradicting the ALJ's determination in order to create a basis for remand.

Similarly, the PTSD Disability Benefits Questionnaire and post-hearing VA disability rating does not constitute "new" evidence and is otherwise immaterial.  The questionnaire identifies the symptoms and diagnoses that Parker was already determined to have – there is no apparent new information about Parker's condition revealed in the questionnaire. (ECF No. 8-1). Moreover, the questionnaire reviews his prior diagnoses and symptoms as they exist presently (i.e., at the time questionnaire was completed) and does not opine on Parker's condition as it would have existed during the period of alleged disability.  Thus, in addition to not containing new information, the questionnaire is not material because it would not be reasonably likely to have changed the outcome of the ALJ's decision.  See Borders, 777 F.2d at 955.  Additionally, the new VA disability rating merely restates that Parker's VA disability rating will continue at the same level as it was when he appeared in front of the ALJ.  See Staton v. Colvin, No. 13-572, 2015 WL 627876 *1, *11 (E.D. Va. Feb. 6, 2015) (evidence is not "new" if it involves "substantively the same information presented on the record.").  Because the post-hearing VA rating provides no new information about Parker's condition during the period of alleged disability, it is not material.  Accordingly, the district court should find that remand is not warranted under the sixth sentence of § 405(g).

C. **The ALJ's Assessment of Parker's Residual Functional Capacity was supported by Substantial Evidence (Claims II, III, V, and VI)**

Parker advances several arguments to support his claims that the ALJ's RFC was not supported by substantial evidence. First, Parker argues that the RFC assessment was not supported by substantial evidence because the ALJ failed to adequately account for his moderate limitations in concentration, persistence, or pace. Parker next argues that the RFC was not supported by substantial evidence because the ALJ failed to consider relevant medical evidence that was generated after his date last insured. Parker also argues that the RFC is not supported by substantial evidence because the ALJ failed to properly consider the C&P examination performed by the VA. Finally, Parker argues that the RFC is not supported by substantial evidence because the ALJ improperly rejected Dr. Lee's treatment evidence. Parker asserts that any one of these errors warrants remand.

An RFC is the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. § 404.1545(a)(1); see Social Security Ruling 96-9p, 1996 WL 374185 (S.S.A.) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When, as is the case here, a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must determine the plaintiff's RFC. 20 C.F.R. 404.1520(e). At step four, the ALJ then determines whether the plaintiff can perform her past relevant work. Id. § 404.1545(a)(5)(i). If the ALJ determines that the plaintiff cannot perform any relevant past work, as was the case for Parker, the ALJ uses the RFC at step five to determine if the plaintiff can "adjust to any other work that exists in the national economy." Id. § 404.1545(a)(5)(ii).

The ALJ is responsible for determining a plaintiff's RFC at the administrative hearing level, and in making this determination, considers all of the relevant medical and other evidence[2] in the record.   Id. §§ 404.1527(b), 404.1545(a)(3), 404.1546(c).   "[R]elevant evidence . . . includ[es] information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources."   SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.).

1.    Claim II

Parker's second claim argues that the ALJ's RFC was not supported by substantial evidence.   Specifically, Parker asserts that under Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the ALJ's RFC limitation to "simple, repetitive, non-production job tasks with no requirement for interaction with co-workers or the general public" did not adequately account for the moderate limitations in concentration, persistence, or pace.   However, despite Parker's arguments, the ALJ's RFC assessment in this case was supported by substantial evidence because it sufficiently accounted for Parker's limitations to the extent they actually affected occupational functions.

In Mascio, the Fourth Circuit held that the ALJ's "residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis,'" and "only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."   Mascio, 780 F.3d at 636 (quoting Social Security Ruling

---

[2] "Other evidence" includes "statements or reports from [the claimant], [the claimant's] treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how ... how impairment(s) and any related symptoms affect [the claimant's] ability to work.   20 C.F.R. § 404.1529(a).

96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). Additionally, the Fourth Circuit noted that "the residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" Id. (quoting Social Security Ruling 96-8p). When the ALJ does not perform an explicit function-by-function analysis, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

With regard to mental impairments, the Fourth Circuit in Mascio specifically stated that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Id. at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). If the ALJ concludes that "the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work," the ALJ is required to "explain why . . . [a finding of] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the] residual functional capacity." Id. Since that case was decided, courts have found that an ALJ complies with Mascio by limiting a claimant to non-production work because such limits adequately account for difficulties in staying on task. See, e.g., Baker v. Colvin, No. 3:15-cv-00637, 2016 WL 3581859, at *3 (E.D. Va. June 7) (collecting cases), adopted by 2016 WL 3582071 (E.D. Va. June 28, 2016).

In this case, the ALJ concluded that Parker had moderate limitations in concentration, persistence, or pace based on his reported difficulty in sustaining concentration and focus for more than simple routine instructions and tasks. (R. 17). But the ALJ also concluded, and

16

explained in a narrative discussion, that he found Parker's testimony about the severity of his symptoms less than credible because of inconsistencies between those reported symptoms and other credible evidence.  For example, the ALJ opined that while Parker was allegedly disabled due to his mental condition, he was able to maintain a "B" average in college classes over two semesters.  (R. 20).  The ALJ explicitly stated, "[t]his level of academic performance is inconsistent with having a disabling mental condition."[3]  Id.  The ALJ also observed that one of the few medical treatment records developed during the alleged period of disability demonstrated that Parker was able to "complete[] multi-step commands without noticeable difficulty, correctly follow[] instructions, and demonstrate[] no dysfunction in long-term recall abilities, abstract reasoning, or short-term recall."  (R. 21).  Finally, the ALJ gave significant weight to the VA determination that Parker was not unemployable because, as was confirmed by his review of the other relevant evidence, "the record [did] not establish that [Parker was] unable to perform the mental demands of simple routine work."  Id.

A primary focus of Parker's argument is that remand is necessary because the RFC does not account for his ability to stay on task – a driving factor behind the Fourth Circuit's decision to remand in Mascio.  But despite explaining at length how medical and other evidence was inconsistent with Parker's alleged symptoms, the ALJ nonetheless formulated an RFC which would account for moderate limitations in concentration, persistence, and pace.  Indeed, this court has previously held that an ALJ accounts for limitations in ability to stay on task by limiting claimants to "non-production job tasks."  See, e.g., Baker, No. 3:15-cv-00637, 2016 WL 3581859, at *3.  And the RFC in this case limited Parker to "simple, repetitive, non-production job tasks with no requirement for interaction with co-workers or the general public."  (R. 18).

---

[3] The ALJ's conclusion only concerned Parker's academic performance during the summer and fall of 2012 – the semesters he was enrolled during his alleged period of disability.  During that time, he did not receive a grade lower than a "C."  (R. 277).

Thus, to the extent any inability to stay on task was borne out by the evidence, the ALJ's RFC assessment explicitly accommodated that limitation. For these reasons, the district court should find that the ALJ's RFC assessment was supported by substantial evidence, and comports with the Fourth Circuit's decision in Mascio because the decision did not "frustrate meaningful review." See 780 F.3d at 636.

    2.    Claim III

Parker's argues in his third claim that remand is warranted because the ALJ violated the Fourth Circuit's holding in Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012), by discrediting the medical source opinion of Dr. Meyers dated July 16, 2015 – more than two years after his DLI. Because the ALJ considered the evidence and explained why he assigned little evidentiary weight to it, the decision complies with Bird and remand is inappropriate.

In Bird, the Fourth Circuit reaffirmed the circumstances under which an ALJ must consider post-DLI evidence. In that case – as in this one – the claimant suffered from mental limitations which apparently worsened after his DLI. The ALJ had declined to consider certain psychological evaluations because they occurred after Bird's DLI. In remanding the case, the Fourth Circuit noted that post-DLI evidence should be considered by the ALJ when it is relevant to prove disability arising before the claimant's DLI. Bird, 699 F.3d at 340-41.

In this case, Parker simply overstates the Fourth Circuit's holding in Bird. The case does not require that the ALJ automatically accept or assign any particular amount of weight to post-DLI evidence regarding the same conditions alleged to be disabling before a claimant's DLI. Rather, Bird merely reaffirms that post-DLI evidence should be considered where it is relevant to prove disability arising before the DLI. Id. And importantly, the ALJ in this case did consider

Dr. Meyers' post-DLI evidence, but assigned little weight to it because Dr. Meyers did not properly opine on Parker's condition during the period of alleged disability. (R. 21). As Parker notes in his brief, the ALJ stated "[a]lthough [Dr. Meyers] reports that the claimant has marked limitations in multiple areas, the opinion was given several years after the claimants' insured status expired and is written in present tense, indicating current functioning rather than functioning in 2012." (R. 21). This is all that Bird required. Accordingly, because the ALJ considered the post-DLI evidence and explained why he assigned little evidentiary weight to it, there is no basis for remand under Bird.

> 3.   Claim V

Parker's fifth claim alleges that the RFC was not supported by substantial evidence because the ALJ failed to assign a specific evidentiary weight to the July 18, 2012 C&P examination. But the C&P examination was not a medical opinion as defined under Social Security regulations, and any failure to explicitly assign evidentiary weight to it was harmless and not a basis for remand.

Social Security regulations establishing the procedure for the evaluation of medical evidence state, in relevant part, "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). "Medical opinions" is defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. at (a)(1).

In this case, Parker's argument that the RFC is not supported by substantial evidence because the C&P examination should have been evaluated and assigned evidentiary weight as a medical opinion is unpersuasive. The C&P examination is used to determine eligibility for VA

disability benefits, not to provide medical treatment. (R. 1926, 1942). The examiner explicitly states that his function is solely as an assessor, "and not as a treatment provider." (R. 1942). While the C&P examination does list symptoms that Parker reported to the examiner and contains a narrative discussion of how Parker presented during the examination, it does not affirmatively diagnose Parker for the purposes of treatment or "reflect judgments about the nature and severity of [his] impairment(s)." See 20 C.F.R. § 404.1527(a)(1). Notably, with respect to occupational limitations, the examiner stated "there is far too much symptom overlap between [Parker's] two diagnoses to reliably differentiate portions of social/occupational impairment. To do so, would represent speculation only on the part of this author." (R. 1930). This admission is strong evidence that the examiner could not, and did not attempt to offer a medical opinion on the nature and severity of Parker's impairments. Rather, the C&P examiner's advisory conclusions – which are focused on diagnosis, not disability – are largely based on Parker's self-reporting of symptoms, not a longstanding treatment relationship with the examiner.

Moreover, even assuming that the C&P examination is a medical opinion, the ALJ's failure to explicitly assign evidentiary weight to it was harmless because the ALJ ultimately assigned substantial weight to the VA disability rating, which the C&P examination produced. (R. 21). The omission is also harmless because the ALJ's RFC assessment accounts for Parker's limitations in judgment, dealing with stress, and maintaining effective relationships by limiting Parker to "simple, repetitive, non-production job tasks with no requirement for interaction with co-workers or the general public." (R. 18). In fact, Parker has not identified any conclusions from the C&P examination which would require a more restrictive RFC. Because the ALJ was not required to assign evidentiary weight to the C&P examination, and because the omission was

otherwise harmless, remand is not appropriate.

      4.    <u>Claim VI</u>

Parker's sixth claim alleges that the ALJ improperly discredited the July 13, 2012 opinion of Dr. Lee. However, because the ALJ identified multiple, proper bases for assigning the opinion little weight, he did not err.

Generally, Social Security regulations require an ALJ to afford significant weight to the medical opinions of treating physicians. <u>See</u> 20 C.F.R. § 404.1527(c)(2). However, the ALJ can assign less evidentiary weight, or discredit entirely opinions that either opine on an issue reserved to the Commissioner or are contradicted by substantial evidence in the record. <u>See</u> <u>id.</u>; § 404.1527(d)(1).

In this case, the ALJ properly assigned little weight to Dr. Lee's opinion that he "[felt the claimant was] not able to work at this time" because that is an opinion regarding Parker's disability, which is an issue ultimately reserved for the Commissioner. (R. 21); 20 C.F.R. § 404.1527(d)(1). The ALJ explicitly stated that he was discrediting the opinion on this basis, and cited to the applicable regulation. This alone was a proper basis upon which to assign little evidentiary weight. Moreover, the ALJ provided a thorough explanation of how other evidence in the record was inconsistent with a determination of disability. <u>See, e.g.,</u> (R. 20) ("This level of academic performance is inconsistent with having a disabling medical condition."); (R. 21) (citing the C&P examiners notes on Parker's ability to complete multi-step commands). Thus, there was substantial inconsistent evidence in the record that would independently support the ALJ's decision to assign little weight to Dr. Lee's opinion on disability.

**D.      The Appeals Council did not Err when it Denied Review (Claim IV)**

Parker's fourth claim asserts that the Appeals Council erred by failing to consider new evidence submitted to it before denying appellate review. However, because the Appeals Council did consider the new evidence submitted by Parker, it did not err.

When new and material evidence is submitted for the first time to the Appeals Council, it will be evaluated along with the entire record that was before the ALJ. See Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011). However, "the regulations do not require the Appeals Council to articulate its rationale for denying a request for review." Id. at 705-06. "Only if the Appeals Council grants a request for review and issues its own decision on the merits is the Appeals Council required to make findings of fact and explain its reasoning." Id. at 706 (citing 20 C.F.R. §§ 404.979, 404.1527(f)(3)) (emphasis in original). Nonetheless, an explanation of denial in light of new and material evidence can be helpful for the purposes of judicial review, but is not required so long as the record provides 'an adequate explanation of [the Commissioner's] decision.' See id. at 706 (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)).

In this case, the Appeals Council did consider the post-hearing evidence submitted by Parker. (R. 2). Beyond acknowledging that it considered the evidence, the regulations did not require any explanation for denial. See id. at 705-06. And even under the Fourth Circuits' reasoning in Meyer, the evidence submitted did not require an explanatory denial because it was neither new nor material. As discussed above, the letters submitted by Dr. Meyers and Dr. Lee – and more specifically, the conclusions contained in them – do not constitute "new" evidence because both doctors were available to Parker prior to the hearing, and he could have solicited their opinions prior to the August 2015 hearing. The letters were also immaterial because they offer opinions on the issue of disability, which is reserved to the Commissioner. To that end,

22

they would not have changed the outcome of the ALJ's decision, especially in light of the fact that similar opinion evidence by Dr. Lee during the hearing was afforded little weight. (R. 21). Accordingly, Social Security regulations did not require an explanation because the post-hearing evidence was not "new" or material, and the district court should find that the Appeals Council did not err by denying review without explanation.

## V.     RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court DENY Parker's Motion for Remand (ECF No. 7) and Motion for Summary Judgment (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 15), and AFFIRM the final decision of the Commissioner.

## VI.     REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this

Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 17, 2017

24